MATTER OF CANADIAN PACIFIC AIRLINES

In FINE Proceedings

500-2093-4

*Decided by Board December 17, 1957*

**Fines—Section 273 of 1952 act—Signatory carrier (sec. 238 of 1952 act) exempt from fine liability for transporting natives of contiguous territory or returning residents inadmissible on documentary grounds.**

No fine lies under section 273 of the 1952 act against a carrier signatory to an Overseas Agreement pursuant to section 238 of the act for transporting to Canada, destined to the United States, alien passengers who are returning residents or natives of contiguous territory inadmissible solely on documentary grounds. (Cf. 4 I. & N. Dec. 689; 7 I. & N. Dec. 329.)

BASIS FOR FINES: Act of 1952—Section 273 (8 U.S.C. 1323).

#### BEFORE THE BOARD

**Discussion:** These appeals in administrative fine proceedings are directed to penalties of $1,000 each ordered imposed on this Canadian common carrier for bringing to Canada on July 27, and August 6, 1956, respectively, from Europe, alien passengers G——P——C—— and A——J——W—— who were ultimately destined to, but lacked documents valid for admission into, the United States.

Both alien passengers were Canadian nationals (one native-born) who had previously been lawfully admitted to the United States for permanent residence. They were returning via Canada after visiting in Europe. Both lacked documents valid for admission to this country (former 8 CFR 211.2). Both had Alien Registration Receipt Cards, Form I-151, which at the date of applications for admission were not valid reentry documents after a European trip.

The facts in relation to the fine for transporting A——J——W—— are as follows: The passenger is a native of England, who was admitted to the United States for permanent residence on August 6, 1950. She purchased a round-trip air ticket in Santa Barbara, California, for travel to Amsterdam, Holland, and return to California. She was routed via United Air Lines from Los Angeles, California, to Vancouver, B.C., and thence to Amsterdam, Holland, via Canadian Pacific Air Lines. Return passage was a reverse of this. This

8

passenger was manifested for the United States by Canadian Pacific Air Lines both on the United States manifest and on the general manifest covering all passengers on the flight. In this case, the record shows the passenger used Canada solely and exclusively as a means to travel from Holland to California.

The record reveals the following situation concerning the transportation of G——P——C—— via Canadian Pacific Air Lines. This passenger, a native of Canada, was permanently admitted to the United States on March 12, 1956. Transportation was purchased in White Rock, B.C., for a trip from Vancouver to Norway and Holland returning to Vancouver. The passenger's family lives in White Rock, B.C. Upon return to Vancouver after the European trip, it was her intention to visit in Canada for a few days before returning to the United States. The passenger was on a Canadian Pacific Air Lines manifest for United States passengers.

The issue is whether the Overseas Agreement, to which Canadian Pacific Air Lines subscribes, requires the imposition of a penalty in these cases. Stated broadly, the agreement imposes on transportation agencies bringing aliens destined to the United States via Canada, the same responsibility as if the agency brought the passenger directly to a United States port.

Because Canadian transportation agencies by Canadian law are required to transport to Canada any Canadian citizen requesting such transportation, it has been held that where such transportation takes place even if the passenger is ultimately destined to the United States, a penalty for violation of our immigration laws will not be incurred (*Matter of TCA Plane CF TFF 206*, F–0109–19, 4 I. & N. Dec. 689). However, if Canada is used solely and exclusively as a means for reaching the United States, this exception has no application for the reason that Canadian law is interested in the transportation of Canadian citizens to Canada and has no interest in the transportation of Canadian citizens to the United States (*Matter of CPA Plane Flight 301*, 500–2026, 7 I. & N. Dec. 329). On these holdings, there would be a fine for the transportation of A——J——W——, but no fine in the case of G——P——C——. Miss C—— was clearly destined to Canada to visit relatives. Miss W——'s interest in Canada was solely as a means of reaching the United States.

The initial provision of law which was the basis for the first Canadian Overseas Agreement was found in section 23 of the Immigration Act of 1917 (8 U.S.C. 162, 1940 ed.), and is as follows:

* * * *Provided further*, That in prescribing rules and making contracts for the entry and inspection of aliens applying for admission from or through foreign contiguous territory, due care shall be exercised to avoid any discriminatory action in favor of foreign transportation companies transporting to such territory aliens destined to the United States, and all such transportation

9

companies shall be required, as a condition precedent to the inspection or examination under such rules and contracts at the ports of such contiguous territory of aliens brought thereto by them, to submit to and comply with all the requirements of this Act which would apply were they bringing such aliens directly to seaports of the United States, and, from and after the taking effect of this Act, no alien applying for admission from foreign contiguous territory shall be permitted to enter the United States unless upon proving that he was brought to such territory by a transportation company which had submitted to and complied with all the requirements of this Act or that he entered, or has resided in, such territory more than two years prior to the date of his application for admission to the United States.

The Immigration Act of 1924 contained a provision in section 17 (8 U.S.C. 217, 1940 ed.) almost the same as the one in the 1917 act. In the 1924 act an exception to the two-year bar to readmission was made in favor of aliens lawfully admitted to the United States returning from a temporary visit from contiguous territory.

The reasons for these provisions of law were to put transportation lines going into contiguous territory on a parity with those coming directly to United States ports in regard to the transportation of aliens destined to the United States, and to help prevent contiguous territory from being used as a means of gaining entry into the United States by aliens desiring to come to this country but who could not obtain passage directly to a United States port because not qualified for admission.

In current law, the provisions which are the basis of the existing Overseas Agreement and which are substantially the same as in the earlier laws are contained in section 238 (a), (b), and (c) of the Immigration and Nationality Act (8 U.S.C. 1228, 1952 ed.). The provision in the new law for the exclusion of aliens brought to contiguous territory by transportation agencies who have not entered into a contract as provided in section 238 is found in section 212 (a) (24) of the Immigration and Nationality Act (8 U.S.C. 1182 (a) (24), 1952 ed.). This subsection carries forward the two-year bar on the admission of aliens not brought to contiguous territory by complying transportation agencies, but makes an exception of importance in considering the cases now before us. The present law exempts from the two-year bar aliens who are natives of Western Hemisphere countries (with a minor exception not material to the consideration of these cases) and returning residents.

Although section 238 of the Immigration and Nationality Act is broad enough to cover natives of Western Hemisphere countries and returning residents, it is argued that as Congress has seen fit to exempt these two classes from the two-year exclusion bar, Congress was not concerned with their transportation to contiguous territory and, hence, penalty should not be imposed for transporting such aliens from overseas to Canada.

10

In the Service argument before the Board, it was stated that the reasons which gave rise to this provision of law in 1917, today do not exist. Because of changes in Canadian law, and other circumstances, no longer is it profitable for a European alien whose ultimate destination is the United States to use Canada as a means of obtaining that end. The Service specifically urged the Board to adopt the position that under the Overseas Agreement carriers are exempt from liability as to natives of contiguous territory and returning residents who are inadmissible solely because of documentary requirements. In view of this background, we are asked to construe existing law liberally toward carriers. The change in the 1952 act exempting from the two-year exclusion bar aliens described in section 101(a)(27)(C) (8 U.S.C. 1101, 1952 ed.), that is, aliens who are natives of Western Hemisphere countries, and aliens described in section 101(a)(27)(B) (8 U.S.C. 1101), that is, aliens returning to the United States after a temporary visit abroad, gives a basis for concluding that as to them, Congress no longer felt the contractual obligation assumed by carriers under section 238 of the Immigration and Nationality Act should apply. No legislative comments concerned with this change in the Immigration and Nationality Act have been found. In light of all the circumstances connected with this problem, we feel this is a reasonable conclusion and we adopt it.

**Order:** It is ordered that the appeals be sustained and that the fines be not imposed.